May it please the court, counsel, my name is Stephen Herrick. I am the attorney for the petitioner on this petition for review. The petitioner contends that the 2008 initial decision of the MSPB denying his application for attorney fees is arbitrary, capricious, and an abuse of discretion otherwise not in accordance with law. The basis of that decision was that the petitioner had achieved only nominal success on his appeal. There are three elements to the petitioner's argument that his success on appeal was not merely nominal. The first is that the petitioner claimed that he was erroneously charged military leave on 22 occasions over an eight-year period from 1991 to 1998. What does that mean, charged, improperly charged military leave? I'm a little confused about the difference between being charged the leave and the five days that were found to be improper use of leave without pay or paid for or not. Your Honor, if I may give you an example. Assume we have a reservist who goes on active duty for two weeks for some sort of training mission. That would run typically from a Monday to a Sunday. The reservist is a federal employee who works five days a week, does not work Saturday and Sunday. The practice before Butterbaugh was to charge 14 days of military leave. I understand that. But what does it mean, charge? That's the problem that I'm not understanding. Each federal employee has 15 days per year of approved military leave. If they take no more than 15 days, then they have no problem. If you get above the 15 days, that's when you have a problem. You have to either use annual leave or leave without pay. Right. So in this particular hypothetical that I've posed to you, 14 days of military leave, prior to Butterbaugh, this Court's decision in Butterbaugh I understand all that. But what I'm not understanding Saturday and Sundays Wait, wait, wait. What I'm not understanding is what was done here with respect to these, I guess, 17 days where he didn't have to take leave without pay or use annual leave. And we ordered that the records be corrected. What did that mean in terms of what was done? Because in order to determine what the success was here, it would be helpful to understand what actions were taken as a result of our earlier decision. And that's really not very clear to me from the briefs. Well, with respect to the issue of leave without pay and the five days that were restored versus the 17 days that were not restored, nothing was done with respect to the Court's prior appeal because those five days were granted in the initial decision in 2006. I understand that. And there was no dispute regarding the facts on the appeal. The Court affirmed that portion of it. The Court reversed on the question of whether Mr. Puselowski's records should be corrected, whether the MSPB Yeah, but that's the thing that I don't understand. What does it mean to correct the records? In this case, Your Honor, candidly, what it means is that he is restored for future use five days of military leave that he had been deprived of. Well, what about the other 17? That's the problem. What happened? The other 17 were properly charged to leave without pay because Mr. Puselowski at that point did not have, in whatever years we're talking about here, and we're talking about several years between 1991 and 1998, Mr. Puselowski, for those 17 days, take a step back, two days in 1991 were improperly charged, three days in 1993 What does it mean to be charged? That's what I'm not understanding. What does it mean to be charged? I'll try to do a better job. You have an account with 15 military days of basically paid military leave. If you take those 15 days, you don't lose any pay. If you exhaust those 15 days, then anything that you use for military leave after that, either it has to be taken on the employee's own dime, either annual leave, or if there is no annual leave remaining, leave without pay. So in this case, it was found that because Mr. Puselowski was charged with weekends when he wasn't supposed to work I'm not, I'm sorry, I'm not understanding this at all. I mean, I understand what happened with respect to the five days. I don't understand what happened with respect to the other 17 days. We ordered that the records be corrected, right? What record is being corrected and how is it being corrected as a result of the decision? The record that was corrected was that the agency, DOJ and DFAS, corrected their records to show that Mr. Puselowski should not have been charged military leave on those 17 days. So that is a correction. So what was happened is that the records charged him with a military leave, but that was never implemented? No, it was implemented, but because he had not lost, because he had not been required to go leave without pay for those 17 days, he had no actual harm. Therefore, pursuant to this agency's policy, which is not the same as with respect to all other agencies, they did not pay him for the time that he was on military leave, that he was not required to use leave without pay. He had, he could be- The bottom line of all of this is that the correction of the record did not have any effect on his financial condition. It simply was a bookkeeping entry by the agency. Is that correct? Well, the five days- We're talking about the 17. ... of the correction did put money in his pocket. The 17 days may or may not have put money in his pocket, depending upon whether he was able to carry over those days to any deficit in the future so that he would not have to go on leave without pay in the event that he had exhausted his military leave in those situations. Now, frankly, we don't know whether that was the case here. So I understand where Your Honor is coming from in saying that this was just a bookkeeping entry, but I would point out that in the first appeal here, the court did reverse and direct the agents and direct the MSPB to tell the agency to correct those records. And I would suggest that since the court went out of its way to do that and that it didn't find that this was a harmless error of no meaning to Mr. Hickman, that this was a trivial point. So element number one is the 22 occasions over eight years in which he was found to have been mischarged the military leave. And that's all he asked for, and that's a hundred percent success rate with respect to that particular issue. The second element we've talked about, which is the correction of the records. And I respectfully submit to the court that these records can and do have consequences in the future with respect to these military service members. We don't know in this particular case, Your Honor, but for example, when these days were restored, they can be carried over into future years. And frankly, from this record and because of the cutoff time of this case, we don't know what happened in the future. But I suggest to you, Your Honor, that you cannot say as a matter of law, if you will, that these are trivial matters, that they don't mean anything, and that Mr. Pusilowski's success in getting his records corrected to reflect that he was mischarged for 22 days of military leave, even though we don't know that it took any money out of his pocket for 17 of those days with respect to this particular case. Maybe the government knows. Maybe the government does, but they ain't saying anything. So we just don't know that in this case because the cutoff time for this particular appeal just doesn't allow us to go into the future to that extent. But I'm saying that Your Honor should not assume for the sake of this argument that those were meaningless. Charge of military leave to federal employees who serve in the Guard and Reserve can be a merely nominal success in the overall context of this case. Explain how this could affect the future. As best as I can tell you, Your Honor, you are allowed to carry over some period of military leave from year to year. So in future periods of military service, if Mr. Pusilowski was exceeding his 15 days for that particular calendar year, the restoration of this leave... Why would he exceed the 15 days? Well, because the Guard and Reserve doesn't necessarily deploy soldiers based upon how much military leave time they have. If you are told to go to Fort Bliss, Texas for a month of training, you only have 15 days of approved military leave in your military leave account. You have to somehow make do for the other 15 days, either annual leave or if you are told to leave without pay. When does it say that you can carry over the military leave? I don't have a citation for you, Your Honor. It's just my understanding that that's always been the case. And in this particular case, with the restoration of these charges, it may have been, and I can't stand here and tell you that it was, but it may have been in the future years that he was able to use those restored charges in order to avoid taking leave without pay in future years. What I'd also like to focus on here, Your Honor, is the percentage of success that was achieved in this case. So you'd only have this, the carryover effect would only benefit him if he were required to serve more than 15 days in some future year? That is correct, Your Honor. How often does that happen? It happens frequently, Your Honor. Reservists are often deployed now for as long as 15 months, and they are, you know, and they... Well, that's when you're called to act. That's true. Okay. My understanding is that it is frequently the case, and we do a number of these cases, and because you only get actual money in your pocket... But he's on active duty when he's doing his 15 days as well. No. Well, he is on active duty, but he's not deployed. Well, he's not deployed overseas, okay? But he has, you know, training. Sometimes they train once a year, sometimes they train twice a year. I can tell you from my experience in these cases, Your Honor, that 15 days doesn't always cover the obligation of the service member, and that's so saving these days that are mischarged can be important in the future in terms of... Temporary, T.A.D., temporary active duty is typically 15 days, isn't it? 14 or 15. But you can certainly, it can certainly be extended due to the exigencies of the service. It can certainly be required on more than one, you know, one time per year. It is not unusual in my experience, Your Honor, that these, and that's what these cases are all about. If none of these cases made any difference in terms of leave without pay, people going without pay on days when they should have been paid, you would never see these cases because it doesn't mean anything to anybody. Did you make all these arguments before the Board? Which particular argument are we talking about here? The ones you're just making to us. A carryover argument. I don't know that that issue came. It was... You see, the reason for my question is we're not making the original decision as to whether you're entitled to this. The Board made that decision. Our job is only to determine whether the Board acted arbitrarily or without evidence in the record. And I'm wondering if you made all these arguments to the Board why they weren't sympathetic to it. Well, I cannot speak to the mindset of the Board with respect to veterans' claims for, you know, military leave. I can say that we are disappointed in the result in this particular case in which it was found that even though... Yeah, but did you make the carryover argument to the Board? That's the question. I can't say that, Your Honor. I don't know that for a fact. I just, I don't know. Why don't we hear from the government and come back on the rebuttal? Mr. Mikkel? May it please the Court. To answer your question, Your Honor, the 30-day carryover policy is in 5 U.S.C. 632.3. And that's described in actually the very first paragraph of this Court's opinion in Pouselowski, the first Pouselowski, and the site is 498 Fed Third at 1343. And it's for that reason that you can only carry over 15 days. Why, in fact, he was only granted 5 days of compensation here for the 34 days of leave without pay he was initially seeking in 1993. The record demonstrates that Mr. Pouselowski... And he can carry over 15 or 30? He can carry over 15, Your Honor. So 15 and 15 equals 30. You get 15 days a year. And by carrying... And if you don't use all of those 15 days, you can carry up to 15 days over. So theoretically, the maximum amount of leave that you may have to use in any one year is 30 days. And so in this case... So if you're charged more military leave than you should have been, that deprives you of the opportunity to carry over additional days. That's exactly right. And that's what happened in this case, Your Honor, because the Board found, and I don't believe it's in dispute here, it certainly wasn't in the first Pouselowski decision, that there were... I want to make a mistake here. There were two days of leave period, 18 and 1998. And that's at JA-15 and JA-17, as well as JA-206 and 207 in the supplemental appendix. So they found, because there was two days of mischarged leave in 1991, those days were not able to carry over into 1990... And it must have been just the way they did it, into 1993. And therefore, the court found that in 93 and 91, assuming there was some carryover provisions in the agency, there was five days of leave that was mischarged. So the five-day computation is the result of taking account of the carryover? I'm assuming that's the case. It's not directly stated in any of the opinions, and I did not find it in the record. I'm just assuming those were the only two possibilities that I could speculate as to where they had the five days. There were 22 days specifically that were alleged as being mischarged military leave. So by carrying those over, they said when Mr. Pusilowski claimed that he had 34 days of leave without pay that he should be compensated for, the board and the agency did not object, or at least I can't find that the agency objected, granted him five days. And therefore, that's why they found that 29 days were not compensable. And that, frankly, also then goes to the point where Mr. Pusilowski argues that he had an overall degree of success, of absolute success. That's certainly not the case, because while he does allege that he had five days of compensation provided, he was seeking compensation for all 34 days, as well as for all the 22 days of military leave. What about his argument that as a result of the correction of the records, he was able to carry over additional military leave days into the future, which might benefit him? Well, one, I agree with the court that wasn't raised below, and there's no evidence that that argument was ever made. But in this case, though, as I just stated earlier, at most, even assuming he made that argument, he can only carry over 15 days into the subsequent year. And those days that he also, and he was credited for the two days in 91 and two, three days in 93. So in effect, the order from this court, which was to provide a proper accounting, it did not say restore military leave, which it couldn't because the statute, again, only allows you 15 days of proper accounting. So in a sense, the order that was issued was simply a ministerial records correction to give a proper historical accounting. It did not restore leave. It did not add any days. And in fact, by the time 2006 rolled around, I'm not even sure Mr. Pusilowski was even serving in the military. He probably was retired, given the fact that he started back in 19, at least, 89. And so what I'm sorry, sir. What does that mean? Well, the point there, Your Honor, would be... In this crisis that we're in now, people are going back into the service after many, many years after their discharge. And their records, we would like to think their records from before are correct to start with. Right. Well, that's a very good point. And we agree with the court. The issue, though, is those military leave days that were restored cannot be reused. They only can be carried over by statute through the following year for 15 days. And there's been no showing by Petitioner in this case that he tried to use those military leave days in subsequent years. But couldn't it be a cascading effect? Maybe he did it that year, but he adds more and it goes into the next year? It could go on indefinitely? Well, it could be a cascading effect. Maybe he has to go on duty for two weeks? Absolutely. It could be a cascading effect. And we have seen those in other cases. But it hasn't been in this case. Because in this case, he provided the military leave that he did take, as well as he also provided accounting in the record of the leave without pay that he was forced to take, or any annual leave. And the court, or the board, as well as the parties, because it wasn't any disagreement, determined that the only leave without pay he was forced to take or any harm that he received were those five days. So you're right. We agree with you. In individual cases, there could be a cascading effect. I know of one specifically that we ended up settling in the ADR program in this court, where you would take the accounting and just keep moving it up and moving it up and moving it up. But that's not the facts of this case, Your Honor. So what you're saying is that so far as we know, that there could have been 15 days of carryover from the last year that's involved here to the next year? I'm sorry. I'm sorry. As I understand it, what he's saying, what's the end, I forget what the end date is here, 98? That's the last day? Right. The last day was two days in pay period 16 in 1998. So he's saying that if the records were corrected, that might allow him to carry over 15 days into future years, which otherwise he might not have been able to carry over. Well But if what I understand that you're saying is that there's no evidence that he wasn't already allowed to carry over 15 days from 1998 into 1999 and so on, and there hasn't been any showing that he would have benefited in future years from the past corrections. Am I understanding that correctly? That is a proper statement of generally the principle of carryover. The problem here is that in 1998, he was mischarged two days leave, so at most he could carry over two days. And therefore, in 1998, let's say in 1999, he would theoretically be allowed to take 17 days of military leave. And if in fact, let's say in 1999, he demonstrated that he had to take leave without pay for one or two days because of those military leave days, then there would have been compensation. Unfortunately, the record doesn't support that finding. Mr. Pusilowski did not provide any evidence that he was forced to take leave without pay during those subsequent years. There's no evidence that he asked for compensation for all of those 272 hours either. Well, the board made that finding. Where did the board come up with that? The board made the finding. What was the evidence for it? Well, the only evidence that I can find, I know we asked for 22 days of military leave without compensation. We know that because this court found that. But there has been no... He was seeking to have 34 days restored. Well, I can point you to 207 in the supplemental appendix where he cites the leave without pay that he wanted restored. And that's the evidence that he had where he wanted those days restored. And because of the time, I'm assuming he wanted compensation for those. And subject to your questions. Mr. Herrick? Thank you. I'll be, Your Honor, hitting exactly on one of the important points here, which is that Mr. Pusilowski did not ask for 272 hours of restored leave because he had been discharged. The comment that he made simply was that he used 272 hours of leave in 1993 since he was only asking for three days to be restored in 1993. It doesn't make any sense to say that it was 272 hours. The entire claim here was 22 days or 176 hours. So to interpret the 272 as time he was looking to have restored because he had been discharged is simply not correct. And I think this court had it right in the original decision, in the original appeal here where it said that he took a total of 34 days of LWOP that year. It doesn't say that he was mischarged. He claimed he was mischarged for 34 days that year. So the real number that we're dealing with here is 22 days. Out of those 22 days, he was successful on five of those days in getting LWOP restored for mischarged military leave. So that's five out of 22 days. That's a success rate of 22.73%, Your Honor, which I suggest, particularly in view of the questions regarding the 17 days, that that's what we are dealing with here, 22.73%. And I would say, Your Honor, that that is not a nominal rate of success. Not a nominal rate of success. And I respectfully submit that the factors in this case, including the 22.73%, must be viewed through the lens that is to be used in examining veterans' benefit statutes. They are to be construed liberally for the benefit of the service member. It was the agency that made the mistake here. It was the agency's conduct that compelled the petitioner to seek vindication of his rights through legal action. This Court should not send a message to service members that they must either go it alone or run the risk that they will not be found successful enough to avoid the crushing monetary burden that litigation imposes on them. This is a hobson's choice. It should not be visited upon any member of the service. In the absence of any further questions, Your Honor, I will conclude my argument at this point. I thank you for your time and attention.